**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:24-cv-000776 |
| v. | § | |
| | § | |
| JOHN DEE SPICER, AS CHAPTER 7 | § | |
| TRUSTEE FOR THE ESTATE OF | § | |
| DEFENDANT REGENCY | § | **JURY DEMAND** |
| CONVERSIONS, INC.; WAYNE | § | |
| DAVIS; WAYNE DAVIS AUTO | § | |
| GROUP, LLC; WDAG, A TEXAS | § | |
| PARTNERSHIP; WDAG, INC.; and | § | |
| MARY ANN DAVIS, | § | |
| | § | |
| *Defendants.* | § | |

**ADMIRAL INSURANCE COMPANY'S ORIGINAL COMPLAINT**
**AND REQUEST FOR DECLARATORY JUDGMENT**

TO THE HONORABLE COURT:

COMES NOW, ADMIRAL INSURANCE COMPANY, Plaintiff, and files this Original Complaint and Request for Declaratory Judgment against JOHN DEE SPICER, AS CHAPTER 7 TRUSTEE FOR THE ESTATE OF DEFENDANT REGENCY CONVERSIONS, INC.; WAYNE DAVIS; WAYNE DAVIS AUTO GROUP, LLC; WDAG, A TEXAS PARTNERSHIP; WDAG, INC.; and MARY ANN DAVIS, Defendants, and in support thereof, would respectfully show the following:

**I.**
**PARTIES**

1. Plaintiff Admiral Insurance Company ("Admiral") is a Delaware corporation with its principal place of business in Scottsdale, Arizona.

2.     Defendant Regency Conversions, Inc. ("Regency") is a corporation incorporated in Texas with its principal place of business in Fort Worth, Texas. Texas business entity records from the Office of the Secretary of State indicate that Regency's registered agent resigned on July 21, 2023. Regency was involuntarily terminated on January 23, 2024, because it failed to maintain a registered agent as required by Texas law. Texas Rules of Civil Procedure Rule 29 provides that service of process on a terminated corporation may be made on the "president, directors, general manager, trustee, assignee, or other person in charge of the affairs of the corporation at the time it was dissolved . . .." Regency filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas on October 2, 2023, styled as *In re Regency Conversions, Inc.*, Case No. 24-43013. The bankruptcy proceeding was converted to Chapter 7. Regency may be served directly through its president and director: Donald Emahiser at 4709 Lone Star Boulevard, Fort Worth, Texas 76106.

3.     Upon information and belief, Defendant John Dee Spicer (the "Trustee") was appointed as the Chapter 7 trustee for Regency's estate, and continues to serve in that role. As such the Trustee stands in the shoes of Regency and has been substituted in place of Regency by operation of law. The Trustee may be served with citation for service of process at the office of Cavazos Hendricks Poirot, P.C. located at 900 Jackson Street, Suite 570, Dallas, Texas 75202.

4.     Defendant Wayne Davis is an individual residing in Tarrant County, Texas. Wayne Davis may be served with citation at 2504 Highland Park Court, Colleyville, Texas 76034, or wherever he may be found.

5.     Defendant Wayne Davis Auto Group, LLC is a Texas limited liability company with its mailing address at 4709 Lone Star Boulevard, Fort Wort, Texas 76106. Texas business entity records from the Office of the Texas Secretary of State indicate that Wayne Davis Auto

Group, LLC has one member, its owner: Gordon W. Davis, an individual, who resides at 1900 Shady Oaks Drive, Southlake, Texas, 76092. The Texas Secretary of State records indicate that Wayne Davis Auto Group, LLC may be served through its registered agent: Gordon W. Davis at 4709 Lone Star Boulevard, Fort Worth, Texas 76106.

6. Upon information and belief, Defendant WDAG, a Texas Partnership is a partnership formed under the laws of Texas. Admiral was unable to locate any Texas business entity records from the Office of the Texas Secretary of State regarding WDAG, a Texas Partnership. Upon information and belief, WDAG, a Texas Partnership may be served through its principal: Gordon W. Davis at 4709 Lone Star Boulevard, Fort Worth, Texas 76106.

7. Upon information and belief, WDAG, Inc. is a Texas corporation with its principal place of business in Texas. Admiral was unable to locate any Texas business entity records from the Office of the Texas Secretary of State regarding WDAG, Inc. Upon information and belief, WDAG, Inc. may be served through its officer: Gordon W. Davis at 4709 Lone Star Boulevard, Fort Worth, Texas 76106.

8. Defendant Mary Ann Davis is an individual residing in Tarrant County, Texas. Mary Ann Davis may be served with citation at 2504 Highland Park Court, Colleyville, Texas 76034, or wherever she may be found.

## II.
## JURISDICTION AND VENUE

9. The foregoing paragraphs are incorporated herein by reference.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and there is complete diversity of citizenship between Plaintiff and Defendants, as the Defendants are not a citizen of any state of which the Plaintiff is also a citizen.

11. Admiral is a Delaware corporation. Admiral has its principal place of business or principal office in Scottsdale, Arizona. Therefore, for diversity of citizenship purposes, Admiral is a citizen of the states of Delaware and Arizona.

12. Regency is a corporation incorporated in Texas with its principal place of business in Fort Worth, Texas. Regency was involuntarily terminated on January 23, 2024, because it failed to maintain a registered agent as required by Texas law. Texas Rules of Civil Procedure Rule 29 provides that for terminated corporations, "judgment may be rendered as though the corporation had not been dissolved." Therefore, for diversity of citizenship purposes, Regency is a citizen of the state of Texas.

13. The Trustee is a practicing attorney and shareholder with the law firm Cavazos Hendricks Poirot, P.C. out of Dallas, Texas. He is the court-appointed trustee of the estate of Regency and is subject to the jurisdiction of this Court.

14. Wayne Davis is an individual residing in Tarrant County, Texas. Therefore, for diversity of citizenship purposes, Wayne Davis is a citizen of the state of Texas.

15. Wayne Davis Auto Group, LLC is a Texas limited liability company. The citizenship of a limited liability company, for diversity of citizenship purposes, is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Upon information and belief, Wayne Davis Auto Group, LLC has one member, its owner, Gordon W. Davis, who resides in Texas. Therefore, for diversity of citizenship purposes, Wayne Davis Auto Group, LLC is a citizen of the state of Texas.

16. Upon information and belief, WDAG, a Texas Partnership is a partnership formed under the laws of Texas. The citizenship of a partnership, for diversity of citizenship purposes, is determined by the citizenship of each of its partners. *Carden v. Arkoma Associates*, 494 U.S. 185,

195-96 (1990). Upon information and belief, the partner(s) of WDAG, a Texas Partnership are citizen(s) of the State of Texas. Therefore, for diversity of citizenship purposes, WDAG, a Texas Partnership is a citizen of the state of Texas.

17. Upon information and belief, WDAG, Inc. is a Texas corporation with its principal place of business in Texas. Therefore, for diversity of citizenship purposes, WDAG, Inc. is a citizen of the state of Texas.

18. Mary Ann Davis is an individual residing in Tarrant County, Texas. Therefore, for diversity of citizenship purposes, Mary Ann Davis is a citizen of the state of Texas.

19. The Court has personal jurisdiction over Defendants Regency; Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; and WDAG, Inc., because they are Texas entities and have continuous, systematic contacts with Texas, and this cause of action is directly related to that activity.

20. Further, this Court has personal jurisdiction over Defendants Wayne Davis and Mary Ann Davis because they are domiciled in Texas.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this coverage dispute occurred in the Northern District of Texas—specifically, the Admiral Primary Policy and the Admiral Excess Policy were both issued to the Named Insured, Regency, in the Northern District of Texas.

### III.
### FACTUAL BACKGROUND

22. The foregoing paragraphs are incorporated herein by reference.

23. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, which arises out of a car crash (the "Collision") that occurred on January 21, 2019, in San Diego,

California.

### A. The Underlying Lawsuit

22.     Victor Manuel Rodriguez, Individually and as Successor in Interest to the Estates of Maria Del Carmen Rodriguez and Stephanie Rodriguez; Jayden Martinez, a minor, Individually and as Successor in Interest to the Estate of Stephanie Rodriguez by and through his Guardian Ad Litem, Victor Manuel Rodriguez; Janelle Martinez, a minor, Individually and as Successor in Interest to the Estate of Stephanie Rodriguez by and through her Guardian Ad Litem, Victor Manuel Rodriguez; Victor Erick Rodriguez, Individually and as Successor in Interest to the Estate of Maria Del Carmen Rodriguez; Michelle Rodriguez, Individually and as Successor in Interest to the Estate of Maria Del Carmen Rodriguez; and Christian Ramirez, an Individual (the "Underlying Plaintiffs") filed suit against Gabriel Aguirre Cardenas ("Cardenas"), Hyundai Motor Company ("Hyundai"), and unknown parties referred to as Does 1 to 100 ("Does") in the Superior Court of the State of California, Orange County – Central Justice Center seeking to recover for injuries caused by the accident (the "Underlying Lawsuit"). The Underlying Lawsuit is styled Case No.: 30-2021-01214563-CU-PL-CJC; *Victor Manuel Rodriguez, Individually and as Successor in Interest to the Estates of Maria Del Carmen Rodriguez and Stephanie Rodriguez, et.al. v. Gabriel Aguirre Cardenas, an Individual, et.al.*

23.     On information and belief, the current live pleading in the Underlying Lawsuit is the Second Amended Complaint, filed on April 12, 2022 (the "Complaint").[1]

24.     In the Complaint, the Underlying Plaintiffs allege that on January 21, 2019, Cardenas' negligent operation of a black Chevy Silverado (the "Silverado") caused it to rear-end a Hyundai Sonata (the "Hyundai Vehicle") driven by Stephanie Rodriguez, resulting in the deaths

---

[1] A true and correct copy of the Complaint is attached hereto as ***Exhibit "A,"*** and is incorporated by reference as if set forth fully herein.

6

of Rodriguez and her mother, and injuries to passenger Christian Ramirez.[2]

25.    The Underlying Plaintiffs further allege that the driver's seat in the Hyundai failed, and that this caused or contributed to the injuries and resulting death of the driver, Stephanie Rodriguez.[3] The Underlying Plaintiffs allege that Hyundai and the Does designed, manufactured, distributed and/or sold the Hyundai Vehicle, including the allegedly defective driver's seat back.[4]

**B.  Hyundai's Cross-Complaint**

26.    On May 4, 2023, Hyundai subsequently filed a Cross-Complaint (the "Cross-Complaint") against FF US Acquisition Corporation d/b/a Tuscany Motor Company ("Tuscany"), and unknown parties referred to as Roes 1 through 20 ("Roes"), as Cross-Defendants.[5]

27.    Roe 1 is Flagship, Inc. ("Flagship"); Roe 2 is Fox Factory, Inc.; Roe 3 is Wayne Davis Auto Group, LLC; Roe 4 is Wayne Davis, an individual; Roe 5 is WDAG, a Texas Partnership; Roe 6 is Mary Ann Davis, an individual; and Roe 7 is Regency Conversions, Inc. d/b/a Regency RV. These Roes were identified in an amendment to the Cross-Complaint filed on April 11, 2024 and a Case Management Statement filed on April 17, 2024.[6]

28.    In the Cross-Complaint, Hyundai alleges the following: In 2003, vehicle manufacturers (including Hyundai and General Motors) agreed to performance criteria aimed at reducing the height mismatches between cars and certain trucks.[7] The measures provided two acceptable options for the height of the primary energy-absorbing structure in all vehicles and

---

[2] *See* **Ex. A** at ¶¶ 19-22.
[3] *See id.* at ¶ 23.
[4] *See id.* at ¶ 46.
[5] A true and correct copy of the Cross-Complaint is attached hereto as ***Exhibit "B,"*** and is incorporated by reference as if set forth fully herein.
[6] A true and correct copy of the Case Management Statement is attached hereto as ***Exhibit "C,"*** and is incorporated by reference as if set forth fully herein.
[7] **Ex. B** at ¶¶ 9-10.

trucks produced after September 2009.[8] Tuscany, and/or certain Roes, modified Cardenas' Silverado, taking it out of compliance with industry standards.[9] As a result of the modifications made by Tuscany and/or certain Roes, the primary energy-absorbing structure of the 2014 Chevy Silverado did not sufficiently overlap with the primary energy-absorbing structure of the Hyundai Vehicle.[10]

29. Hyundai alleges that in the event that the Underlying Plaintiffs are entitled to recover against Hyundai, then the acts and omissions for which Hyundai is responsible were caused by the negligence or conduct of Tuscany and the Roes by taking Defendant Cardenas' Silverado out of compliance with industry standards.[11]

30. Admiral is providing a defense to Regency, Wayne Davis, and Mary Ann Davis in the Underlying Lawsuit under a reservation of rights. Admiral has disclaimed coverage to Wayne Davis Auto Group, LLC, WDAG, a Texas Partnership, and WDAG, Inc. because they do not qualify as insureds under the Policies.

C. **The Tender Letter & Asset Purchase Agreement**

31. Flagship sent a letter dated March 28, 2024, to WDAG, Inc., Wayne Davis and Mary Ann Davis (the "Tender Letter") stating that "[b]ased on the allegations in the cross-complaint, it appears that the 2014 Silverado pickup was modified by WDAG, not Flagship."[12]

32. Under a 2017 Asset Purchase Agreement, Flagship, Jeff Burttschell, and Michael Graber allegedly purchased the assets of a specialty truck conversion business from Wayne Davis Auto Group, LLC and WDAG, a Texas Partnership for cash (the "Agreement").[13]

---

[8] *Id.* at ¶10.
[9] *Id.* at ¶11.
[10] *Id.* at ¶12.
[11] *Id.* at ¶13.
[12] A true and correct copy of the Tender Letter is attached hereto as ***Exhibit "D,"*** and is incorporated by reference as if set forth fully herein.
[13] *See* **Ex. D**.

8

33. Flagship alleges that under the Agreement, WDAG retained certain liabilities for the conversions that it built prior to the sale, and WDAG is alleged to owe indemnity to Flagship against all claims for retained liabilities.[14]

### D. The Truck Conversion Process

34. Upon information and belief, the truck conversion process involved the installation of custom conversion packages on trucks before their delivery to dealerships. Dealerships purchased the trucks directly from the manufacturers, but the trucks were shipped for conversion installations before being forwarded to the dealerships for sale to individual consumers. Based on information and belief, the conversion package in the Silverado was installed in 2014.

### E. The Admiral Policies

35. Admiral issued renewal Commercial General Liability Policy Number CA000026458-02, with a policy period of August 4, 2018, to August 4, 2019 (the "Admiral Primary Policy" or "Policy"), to the Named Insured, Regency Conversions, Inc. at 4709 Lone Star Boulevard, Fort Worth, Texas 76106.[15] The Policy is countersigned in Austin, Texas. The Policy Limits for the Commercial General Liability Coverage Part include an Each Occurrence Limit of $1,000,000, a General Aggregate Limit (Other Than Products – Completed Operations) of $2,000,000, and a Products-Completed Operations Aggregate Limit of $2,000,000.

36. Admiral also issued renewal Excess Liability Policy Number GX000000338-02, with a policy period of August 4, 2018, to August 4, 2019 (the "Admiral Excess Policy," and collectively the "Admiral Policies"), to the Named Insured, Regency Conversions, Inc. at 4709

---

[14] *Id.*

[15] A true and correct copy of the Admiral Primary Policy is attached hereto as ***Exhibit "E,"*** and is incorporated by reference as if set forth fully herein.

9

Lone Star, Fort Worth, Texas 76106.[16] The Policy Limits for the Excess Liability Policy include an Each Loss Event Limit of $9,000,000, and a Policy Aggregate Limit of $9,000,000.

37.  The Admiral Excess Policy provides that it "will follow the same provisions, exclusions and limitations that are contained in the applicable 'controlling underlying insurance', unless otherwise directed by this insurance."[17] The Admiral Primary Policy is identified as controlling underlying insurance.[18] Thus, since the Admiral Excess Policy is a "follow form" policy, the coverage analysis with respect to the Admiral Primary Policy applies to the Admiral Excess Policy.

### F. Bankruptcy Proceeding

38.  On October 2, 2023, Defendant Regency Conversions, Inc. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the Northern District of Texas, Case No. 23-43013; *In re: Regency Conversions, Inc*. This case was subsequently converted to Chapter 7.

## IV.
## ADMIRAL OWES NO DUTY TO DEFEND OR INDEMNIFY DEFENDANTS REGENCY, WAYNE DAVIS, AND MARY ANN DAVIS

39.  The Admiral Primary Policy contains the following Prior Products and Operations Exclusion[19]:

*   *   *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PRIOR PRODUCTS AND OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

---

[16] A true and correct copy of the Admiral Excess Policy is attached hereto as *Exhibit "F,"* and is incorporated by reference as if set forth fully herein.
[17] *See* **Ex. F** at p. 7.
[18] *See id.* at p. 5.
[19] *See* **Ex. E** at p. 45.

10

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of:

> **a)** Goods or products manufactured, sold, handled, distributed or disposed of by you, or on your behalf, or by any person, company, entity or organization for whom you may be legally liable, before the date shown in the Schedule; or
>
> **b)** Any project on which you, or any person, company, entity or organization acting on your behalf or for whom you may be legally liable, first commenced work or operations before the date shown in the Schedule.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.

*     *     *

40. The Prior Products and Operations Exclusion precludes coverage for "bodily injury" or "property damage" arising out of products manufactured, sold, handled, distributed or disposed of by the insured before February 14, 2017, or projects on which the insured first commenced work or operations before February 14, 2017.[20]

41. While the underlying pleading, the Cross-Complaint, does not specify the precise date when the conversion work occurred, extrinsic evidence will demonstrate that the relevant conversion package was installed well before the February 14, 2017, date in the exclusion.

42. Under Texas law, while the "eight corners rule" generally governs an insurer's duty to defend, the Texas Supreme Court recently recognized an exception exists when there is a gap in the plaintiff's pleading, and the extrinsic evidence: (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved. *Monroe Guar. Ins. Co. v. BITCO*

---

[20] *See id.*

11

*Gen. Ins. Corp.,* 640 S.W.3d 195, 199, 201-02 (Tex. 2022).

43. The extrinsic evidence conclusively proves that the modification to the Silverado occurred prior to February 14, 2017, thus triggering the Prior Products and Operations Exclusion and precluding Admiral's duty to defend or indemnify Defendants Regency, Wayne Davis, and Mary Ann Davis for claims in the Underlying Lawsuit. The extrinsic evidence therefore satisfies the requirement for the *Monroe* exception to the "eight corners rule," as it addresses solely an issue of coverage, does not contradict any facts in the pleadings, and conclusively establishes the relevant coverage fact.

44. Admiral respectfully requests that this Court consider the extrinsic evidence in this case and enter a declaratory judgment finding that the Prior Products and Operations Exclusion in the Admiral Primary Policy eliminates the duty to defend or indemnify Defendants Regency, Wayne Davis, and Mary Ann Davis for the claims presented in the Underlying Lawsuit.

## V.
## DEFENDANTS WAYNE DAVIS AUTO GROUP, LLC, WDAG, A TEXAS PARTNERSHIP, AND WDAG, INC. ARE NOT INSUREDS UNDER THE POLICIES

45. Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; nor WDAG, Inc. qualify as an "insured" under the Admiral Policies. The Preamble to the Admiral Primary Policy provides that "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.[21] The only Named Insured identified in the Declarations is Regency Conversions, Inc., and there are no endorsements or other provisions adding additional Named Insureds.[22] The Preamble further provides that the word "insured" means any person or organization qualifying as such under Section II – Who Is An

---

[21] **Ex. E** at p. 10.
[22] *See id.* at p. 4.

Insured.[23]

46. The "Who Is An Insured" section in the Admiral Primary Policy provides as follows, in pertinent part[24]:

\* \* \*

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

(\* \* \*)

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(\* \* \*)

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

\* \* \*

47. There is no language in the "Who is an Insured" section of the Admiral Primary Policy which would qualify Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; or WDAG, Inc. as an "insured" under the Policies.

48. The Admiral Primary Policy also contains broad form additional insured endorsements, but none are applicable here. Specifically, the Policy contains an additional insured

---

[23] *Id.* at p. 10.
[24] *Id.* at p. 18.

provision for owners and contractors on whose behalf the Named Insured is performing ongoing operations when required by written contract, but only with respect to ongoing operations.[25] The Policy also contains an additional insured endorsement, when required by written contract, in favor of vendors of the Named Insured's products, lessors from whom the Named Insured leases equipment, managers or lessors of premises leased to the Named Insured, sponsors of trade shows where the Named Insured operates a booth, and mortgagees, assignees and receivers of premises arising out of the Named Insured's ownership, maintenance or use of the premises.[26]

49. None of these additional insured endorsements apply to Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; or WDAG, Inc. Further, based on information and belief, none of those entities have a written contract with the Named Insured, Regency, requiring that they be named as an additional insureds under the Policy. Accordingly, Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; and WDAG, Inc. do not qualify as "insureds" under the Admiral Policies. Thus, Admiral has no duty to defend or indemnify them in the Underlying Lawsuit.

50. Alternatively, in the unlikely event that Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; or WDAG, Inc. are found to somehow qualify as additional insureds under the Admiral Policies, the Prior Products and Operations Exclusion in the Admiral Primary Policy would still eliminate any duty by Admiral to defend or indemnify them in the Underlying Lawsuit.

51. Therefore, Admiral respectfully requests this Court to issue a declaratory judgment that Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; and WDAG, Inc. do not qualify as additional insureds under the Admiral Primary Policy or the Admiral Excess Policy, and that Admiral has no duty to defend or indemnify these entities for the claims in the Underlying Lawsuit.

---

[25] *See id.* at p. 58.
[26] *See id.* at p. 55-60.

## VI.
## JURY DEMAND

52. Admiral demands a trial by jury for all issues of fact and tenders the appropriate fee with this complaint.

## VII.
## CONDITIONS PRECEDENT

53. All conditions precedent have been legally satisfied.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff ADMIRAL INSURANCE COMPANY respectfully asks this Court for a judgment against Defendants JOHN DEE SPICER, AS CHAPTER 7 TRUSTEE FOR THE ESTATE OF DEFENDANT REGENCY CONVERSIONS, INC.; WAYNE DAVIS; WAYNE DAVIS AUTO GROUP, LLC; WDAG, A TEXAS PARTNERSHIP; WDAG, INC.; and MARY ANN DAVIS for the following:

a. A declaration finding that the Prior Products and Operations Exclusion in the Admiral Primary Policy eliminates Admiral's duty to defend or indemnify Defendants Regency Conversions, Inc., Wayne Davis, and Mary Ann Davis for the claims in the Underlying Lawsuit under the Primary Policy or the Excess Policy;

b. A declaration that Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; and WDAG, Inc. do not qualify as insureds under either the Admiral Primary Policy or the Admiral Excess Policy, and that Admiral has no duty to defend or indemnify these entities for the claims in the Underlying Lawsuit;

c. Alternatively, a declaration that Admiral has no duty to defend or indemnify Wayne Davis Auto Group, LLC; WDAG, a Texas Partnership; and WDAG, Inc. due to the application of the Prior Products and Operations Exclusion in the Admiral Primary Policy;

d. Recovery of reasonable and necessary attorney's fees and costs incurred by Admiral in prosecuting this action;

e. Costs of Court;

f. Prejudgment and post-judgment interest as provided by law; and

g. For such other and further relief to which Plaintiff may show itself justly entitled.

    Respectfully submitted,

    **RYMER, ECHOLS, SLAY**
    **& NELSON-ARCHER, P.C.**

    By: _____
    Nathan M. Rymer
    State Bar No. 00792814
    Catherine G. Gross
    State Bar No. 24120870
    1502 Augusta Drive, Suite 400
    Houston, Texas 77057
    Telephone: (713) 626-1550
    Facsimile: (713) 626-1558
    nrymer@resnlaw.com
    cgross@resnlaw.com

    **ATTORNEYS FOR PLAINTIFF**
    **ADMIRAL INSURANCE COMPANY**